UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| ROSANNA MORELLI, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Case No. 2:07-CV-00089-GZS |
| | ) | |
| STEVEN WEBSTER, | ) | |
| | ) | |
| Defendant | ) | |

**DEFENDANT'S TRIAL BRIEF**

**I.     Factual Background**

This case arises out of a brief interaction on March 3, 2006 between Plaintiff and Defendant in a hotel during an undercover prostitution sting operation in which Defendant, a Detective Sergeant with the South Portland Police Department, was involved.  On that date a joint operation involving police officers from Portland and South Portland was investigating a number of "escort services" which advertised in the *Phoenix* newspaper.  These types of businesses are known to police to often serve as fronts for the prostitution trade. The police had obtained the use of two rooms in the Best Western Merry Manor Inn in South Portland for their operation.  In one room, Room 203, an undercover officer posing as a "john" would try to arrange for someone from the escort service to come to his room and to see what "services" they would be willing to perform for payment.  In the adjacent room, Room 205, other officers and an assistant district attorney would monitor the activities in Room 203 through the use of audio and video surveillance equipment.

Undercover officer Peter MacVane called an escort service called "Serena's Heaven On Earth" and arranged for a woman named "Vanessa" to come to his hotel room.  "Vanessa" was

1

later identified as Plaintiff Rosanna Morelli.  When Ms. Morelli arrived in Room 203, she told Officer MacVane what the cost of her "services" would be, and decoy money that belonged to the South Portland Police Department was given to her and then placed on a dresser in the room. Following a brief discussion, Plaintiff became convinced that MacVane was a police officer and became agitated and loud, indicating that she did not know who MacVane "was with," or "who might be looking through that [expletive deleted] door," referring to the door from the room to the hallway outside.  Plaintiff also demanded she be given money for gas after police wasted her time, and grabbed some of the decoy money before heading out into the hallway.  One officer present in Room 205, Officer Timothy Farris of the Portland Police Department, knew Morelli from her involvement in several prostitution sting operations in Portland and indicated she was a known prostitute.

     Plaintiff's theft of the money was observed on the monitor in the surveillance room and several officers exited that room to confront Plaintiff in the hallway before she could leave the hotel with the police department's money.  Initially, Sgt. Webster stayed in Room 205 with the assistant district attorney, however he soon heard loud yelling and profanities coming from Plaintiff out in the hallway where she had been intercepted by the officers who had left the surveillance room.  Because he was concerned about hotel guests, including children he had seen previously in the hallway, being disturbed by Ms. Morelli's outburst, Sgt. Webster went out into the hallway to try to end the disturbance.  When he exited the surveillance room, Sgt. Webster observed Plaintiff approaching him, ignoring the other officers' commands for her to stop and to cease her yelling.  Sgt. Webster was in plain clothes, but wearing a large police badge on his belt. There were both plain clothes and uniformed officers dealing with Plaintiff when Sgt. Webster

reached the hallway, and Plaintiff by this time was well aware that she was involved in police operation.

As Sgt. Webster stood in the hallway, Plaintiff and the officers trying to stop her approached him. Suddenly, Plaintiff tried to push him out of her way by shoving him to his chest with both her hands. In the written statement given to police within days of this incident, Plaintiff admitted that she used her "forearm and body to move him out of my space." Because he was not expecting this sudden assault, Sgt. Webster was briefly knocked off balance by Plaintiff's shove. He took hold of Plaintiff's upper arms with both his hands to keep her from striking him again, and holding her against the hallway wall to immobilize her. Sgt. Webster advised Plaintiff: "you can't shove the police." Because Plaintiff continued to be disorderly in the hallway and because he did not know if the police department's decoy money had yet been recovered from her, Sgt. Webster placed his hand on Plaintiff's shoulder and escorted her out of the hallway and back into Room 203 where she had been moments earlier. Sgt. Webster did this in an attempt to calm Plaintiff down and to end the disturbance in the common area of the hotel where hotel guests would be exposed to it.

Once inside Room 203, Sgt. Webster had Plaintiff sit on the bed while he knelt on the floor so he could speak to her at her level. Sgt. Webster learned that the decoy money had been recovered, something he did not know during their brief interaction in the hallway. Sgt. Webster advised Plaintiff that he was not going to charge her with any crimes, including the assault she committed against him, and that if she would simply agree to leave the hotel peacefully she was free to go. While indicating that she was going to sue Sgt. Webster, Plaintiff did leave the hotel without further incident. The interaction in the hallway occurred in a very short amount of time, estimated at 20-40 seconds by one participant, testifying under oath. Plaintiff has testified that

3

she spent no more than five minutes in Room 203 with Sgt. Webster and the other officers after she returned from the hallway.

Plaintiff has filed a two count Complaint, the first pursuant to 42 U.S.C. § 1983 and claiming a violation of her right to be free from unreasonable searches and seizures under the Fourth Amendment to the U.S. Constitution. The second count makes the same allegation pursuant to the Maine Civil Rights Act, but adds an alleged violation of the Fourteenth Amendment. Following summary judgment and an appeal to the First Circuit Court of Appeals, the only conduct that is at issue is Sgt. Webster's alleged use of excessive force while temporarily detaining Plaintiff and escorting her out of the hallway to speak to her. His right to detain her has been upheld by the appellate court. Defendant contends that Plaintiff cannot make out a violation of the federal constitution and, in the alternative, that he is immune from liability for such claims and will be entitled to judgment in his favor.

## II.     Legal Argument

### The Fourth Amendment Use Of Excessive Force Claim (Count I)

In order to establish a Fourth Amendment excessive force claim, Plaintiff must show that Sgt. Webster used force against her that was unreasonable under all the circumstances. *See Graham v. Connor*, 490 U.S. 386 (1989); *Asociacion de Periodistas de P.R. v. Mueller*, 529 F.3d 52 (1st Cir. 2008). In determining the objective reasonableness of a police officer's use of force, a court should consider the severity of the crime at issue, the extent to which a suspect poses a threat to the safety of the officer or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight. *Graham*, 490 U.S. at 396. At the moment Sgt. Webster applied force to Plaintiff's upper arms to restrain her, Plaintiff had committed an assault against him, was a threat to him or others, and was trying to both evade arrest by leaving the scene

4

and/or resisting it by trying to shove him out of her way.  Sgt. Webster cannot be subject to liability for excessive force under the Fourth Amendment based on negligent, rather than intentional, conduct.  *Brower v. Inyo County*, 489 U.S. 593 (1989); *Landrigan v. City of Warwick*, 628 F.2d 736 (1st Cir. 1980).  Defendant contends that any injury allegedly suffered as Sgt. Webster attempted to prevent Plaintiff from assaulting him again, by holding her by her upper arms and using a wall to immobilize her was not intentionally inflicted and could not meet any legal test beyond mere negligence, at best.  Sgt. Webster is entitled to judgment for any use of excessive force claims found in Count I because he did not intentionally act to deprive Plaintiff of her right to be free from excessive force by his necessary act of self-defense or by using a minimal amount of force to detain Plaintiff as she sought to leave the hotel to investigate Plaintiff's role in a suspected prostitution ring and/or the whereabouts of the decoy money.

In the alternative, Defendant contends that he is entitled to qualified immunity because a reasonable police officer, when viewed objectively, could have concluded that immobilizing Plaintiff against the hallway wall by holding her upper arms to prevent another assault against him in the face of her resistance to that effort would be lawful under the circumstances.  In making a split-second judgment about the need to use physical force to prevent another assault, Defendant was not required to achieve control over Plaintiff through the use of the least intrusive or forceful means of doing so to preserve his immunity under the Fourth Amendment.  *Saucier v. Katz*, 53 U.S. 194 (2001); *see also Illinois v. Lafayette*, 462 U.S. 640 (1983); *United States v. Martinez-Fuerte,* 428 U.S. 543 (1976).  It is enough if an objectively reasonable police officer would deem his actions to be reasonable at that moment.  *Graham v. Connor*, 490 U.S. 386 (1989).  Sgt. Webster is entitled to judgment based on his qualified immunity and his decision to take hold of Plaintiff's arms to prevent her from assaulting him again, even if it unintentionally

5

led to Plaintiff suffering an injury to her arm or shoulder as she alleges. *Jennings v. Jones*, 499 F.3d 2, 18 (1st Cir. 2007)(officers entitled to qualified immunity if they "acted reasonably in exercising excessive force"); *Saucier v. Katz*, 533 U.S. 194, 205-06 (2001)(qualified immunity "protects officers from the sometimes hazy border between excessive and acceptable force").

### Maine Civil Rights Act (Count II)

The Maine Civil Rights Act was patterned after 42 U.S.C. § 1983, and courts determining rights under the state constitutional standards have employed the same qualified immunity analysis as is used under the U.S. Constitution. *See Grenier v. Kennebec County*, 733 F. Supp. 455, 458 n.6 (D. Me. 1990); *Jenness v. Nickerson*, 637 A.2d 1152, 1155 (Me. 1994). As a result, the arguments raised herein to the § 1983 claim apply equally to claims brought under the Maine Civil Rights Act for violations of federal constitutional protections. *Comfort v. Pittsfield*, 924 F. Supp. 1219 (D. Me. 1996). Sgt. Webster is entitled to judgment as to the allegations of Count II of the Complaint for the same reasons he is entitled to judgment in his favor as to Count I.

In Count II, Plaintiff appears to claim a violation of the Fourteenth Amendment that she did not allege in her § 1983 claim in Count I (only Fourth Amendment violation alleged, *see* ¶ 23). *See* Complaint at ¶ 26. The Fourteenth Amendment claim, however, is based on Plaintiff's claim that Sgt. Webster used "physical force and violence against her." *Id*. at ¶ 28. All claims that Defendant used excessive force in the course of detaining Plaintiff, however, must be analyzed under the Fourth Amendment and its "reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 395 (1989). Plaintiff is not entitled to circumvent this rule by pleading an alleged use of unreasonable force against her as a separate cause of action under the Fourteenth Amendment. "The first step in any such claim," the Supreme Court directed, "is to identify the specific constitutional right allegedly infringed." *Id*. (*citing Graham v. Connor*, 490 U.S. 386,

394 (1989) and *Baker,* 443 U.S. at 140). Clearly, any claims by Plaintiff that she was subject to unreasonable force in connection with her detention are governed by the Fourth Amendment standard. Since "the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment…must be the guide for analyzing these claims." *Graham*, 490 U.S. at 395. Any claim that Plaintiff's use of force claim is governed by the Fourteenth Amendment's more generalized due process protections is prohibited by *Graham*.

Defendant believes that it is unnecessary to instruct the jury separately on the state constitutional claim and that judgment can simply be entered on Count II by the court, consistent with the finding as to Count I.

### III. Conclusion

For the above-stated reasons and based on the facts he intends to establish at trial, Defendant Steven Webster contends that he will be entitled to judgment in his favor at the conclusion of the presentation of evidence at trial.

DATED at New Gloucester, Maine this 1st day of April, 2009.

                                             /s/ *Edward R. Benjamin, Jr., Esq.*
                                             Edward R. Benjamin, Jr., Esq.
                                             Attorney for Defendant Steven Webster

THOMPSON & BOWIE
Three Canal Plaza
P.O. Box 4630
Portland, ME 04112
(207) 774-2500
(207) 774-3591 - facsimile

## CERTIFICATE OF SERVICE

I hereby certify that on April 1, 2009, I electronically filed Defendant's Trial Brief with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following registered participants:  Barbara L. Goodwin, Esq. and Zachary L. Heiden, Esq.

*/s/Edward R. Benjamin, Jr., Esq.*
Edward R. Benjamin, Jr., Esq.
Attorney for Defendant Steven Webster

**THOMPSON & BOWIE, LLP**
Three Canal Plaza
P. O. Box 4630
Portland, ME  04112
(207) 774-2500
ebenjamin@thompsonbowie.com